Upon the annexed statement of facts, understanding as I do from it that the school committee of North Providence declared the office of clerk of their board vacant, without notice to the clerk of the charges against him, and without affording him an opportunity by proof and argument to defend himself,
I am of opinion, and decide, that said vote was void, and that John H. Willard is therefore legally clerk of said board.
If Mr. Willard, being present, asked no delay, but proceeded to defend himself, he would be deemed to have waived formal notice, and the vote would be valid.
As nothing of this kind is stated in the annexed statement of facts, I presume the contrary to be true, and this renders it unnecessary for me to examine into the second question stated by the commissioner. *Page 597 
APPEAL OF JOHN H. WILLARD.
A clerk of a school committee may be removed from office by the committee, for cause, after notice and hearing.
THIS appeal, was at the request of John H. Willard, brought before Ames, Chief Justice, upon the following statement by the commissioner; and was decided April 18, 1857.
"Statement and decision in case of the appeal of John H. Willard from a vote of the school committee of North Providence, by which they declared his office, as clerk of said committee, vacant.
"This appeal was received at the office of the commissioner of public schools on the 27th of March, 1857. It is directed to the commissioner, and sets forth the fact, that, on the 21st day of March, 1857, the school committee of North Providence did, by resolution, declare vacant the office of clerk of their board, at that time held by the appellant, John H. Willard, for the reasons set forth in the said resolution; that said Willard had refused to present a certain paper to the board when demanded by vote of the committee; that he refused or failed to make certain corrections or additions to the records of said committee, when ordered by their vote; that he had used improper language to the members of said committee at their meetings, and for other matters alleged. The appeal alleges that these charges are false and malicious, and also claims that the committee have no legal authority to remove a clerk.
"The hearing was appointed for April 13th, at which time the parties appeared at the office of the commissioner of public schools, and a full hearing of the case was had.
"Mr. Willard appeared in behalf of his appeal, and Mr. Stiness for the school committee. Much testimony was introduced, and much of it was conflicting. These are the facts, as they appear to the commissioner to have been proved in the case.
"Sometime in July, 1856, a paper was sent from the commissioner of public schools to the school committee of North Providence, through their clerk, Mr. Willard, with a request that he would communicate it to the board. When the board *Page 598 
met this paper was called for, and Mr. Willard did not produce it. A vote was passed demanding it; still it was not produced, and the committee adjourned without it. At a subsequent meeting it was given to the committee. Mr. Willard attempted on the trial to show that he might choose his own time to produce it, and that his refusal was only a qualified one. On this point the commissioner is clearly of opinion that the clerk of a board like a school committee, has no discretion whatever in such cases. The records and papers are not his private property, but belong to the committee, and he has only charge of them, and holds them entirely subject to their order. It was said that the paper in question was one that would prevent some action of the committee, and would in some respects damage the reputation of the commissioner. But the clerk of a school committee is not the judge of the duties and business of the committee, nor the custodian of the commissioner's reputation. If the committee demanded a paper belonging to them, and insisted on that demand, it was the clerk's duty to present it, no matter what business might be prevented or cut off by it, and no matter whose reputation might be hurt.
"The next matter in the resolution from which the appeal was taken, related to the refusal of the clerk to amend the records of the meeting at which the abovenamed paper was demanded. It appears by the clerk's records, that at the next meeting the record of the meeting above named was not approved, on account of its imperfection. A motion to amend, by inserting the words `which was refused,' and which would have made the records accord with the truth, was laid on the table, in the hope that after consideration the clerk would make the proper amendment. In December, however, the amendment not having been made, a vote was passed to amend as above stated, and the clerk refused to amend. He contends that his refusal was only conditional, — he being willing to add after the words `that the clerk be directed to produce the decision of the commissioner,' these other words, `which was refused,' provided he could spread his reasons for refusing on the records of the committee. No vote was taken by the committee to prevent this putting his reasons on record; and the clerk appears never to have made any such proposal to the committee, except in the intervals of a very angry and excited personal controversy *Page 599 
with the chairman and others. Neither did he ask the privilege of writing out his reasons, and placing them on file with the decision of the commissioner, which had never been recorded. The books of the committee show that the required correction has never been made; and as the committee, and not the clerk, are responsible for the accuracy of these records after their approval by themselves, and especially after they by vote direct them to be amended, the commissioner must consider it a fact proved, that the clerk did refuse to amend the records, according to the facts, as he was required to do by vote of the school committee.
"As to the matter of improper language used by the clerk to the committee, the commissioner will dismiss it entirely, simply remarking, that the testimony goes to show that Mr. Willard is only one of those who may have used words unbecoming the dignity of those who have the guardianship of our public schools. Undoubtedly, in the angry controversies of the year, all were provoked; and the one who best governed his temper and controlled his tongue, certainly has more to feel proud of, than he who excelled in the harshness and coarseness of the epithets applied to his fellows.
"The resolution appealed from contained other allegations, which it is not necessary to consider, since the first two above recited are sufficient, and are in fact all that is really essential to the case.
"Mr. Willard contended that the charges above were malicious. But as the facts do clearly show that he did fail to produce the decision, and did also fail to amend the records as directed, it would seem that there could be no malice on the part of the committee. Indeed, it was clearly established, that the resolutions making the vacancy were passed by a vote of six to two, — Mr. Willard himself voting with the minority. The only indication of ill-will is found in the fact, that the committee allowed so much time to elapse, — from July to March, — before taking energetic measures to maintain their own rights in the matter. But this is accounted for by the fact, that they were hoping for a peaceable arrangement until December, when they passed a vote similar to the resolution under consideration, from which an appeal was taken, and Mr. Willard was reinstated because of a deficiency in proving *Page 600 
the notice of the intention of the committee to pass the vote of removal from office. The commissioner could discover no evidence whatever of malice on the part of the committee as a body.
"Mr. Willard also claimed that the resolutions were false, since he had only, as his argument stated, refused, with aqualification, to perform what was required. But whatever qualifications might have been made, or whatever favors were or were not asked by the clerk, they were not allowed by the committee; and as the records are still imperfect, it must be held that there was a refusal, in act at least, to perform a duty specially prescribed by vote of the committee, and that the committee have the right to seek other instruments to carry out their wishes.
"Mr. Willard, further, in his argument, contends that no power is given in the school laws to the committee to remove a clerk, and that such an officer can be removed only by impeachment; but section 65 of the law, to which reference is made, speaks of penalties for the non-performance or mal-performance of duties by school officers, and does not mention removal from office. There is a wide difference between removal from office, and punishment inflicted for wilful crime in office. As removal is not mentioned in the law, this must, when deemed necessary, be done in accordance with common law. A decision was made by the late commissioner, Hon. E.R. Potter, in relation to the removal of trustees, in which he says, `they can only be removed after notice and trial for cause;' and this implies that these and other school officers can be removed, by the bodies appointing them, after such notice and trial, for cause. An opinion given by Chief Justice Ames on January 31, 1857, is to the purport that a clerk of a school committee can be lawfully removed for good cause, after notice and trial. Another opinion given by the same judge in case of Smith, asking a rehearing before the commissioner, implies that the evident design of the school law was to relieve the courts from litigation in the small matters that may concern the public schools, and to provide tribunals, cheap, accessible, and speedy, for the redress of wrong or injury in such cases. But if a school committee must be compelled to go before a court of law for redress, in cases of every refractory clerk or other officer elected *Page 601 
by them, for the sole purpose of giving expression to, or of recording their doings, this very laudable object of the law will be entirely defeated. This seems entirely contrary to the whole spirit of the law, and is believed to be contrary to usage also.
"It is therefore held, that the committee have power to remove their clerk, after sufficient notice of their intention, and opportunity for trial and defence. That the appellant had such notice and made defence, was fully proved. The appellant asks that the facts may be laid before Hon. Chief Justice Ames for his opinion thereon.
"It then only remains to consider whether the causes alleged for removal, as above recited, were true, and sufficient to warrant the action of the committee; and the commissioner decides that, in his opinion, they were fully proved to be true, as above stated, and that they were also sufficient to warrant the removal.
"The vote or resolution is therefore hereby affirmed; and it is declared, that the office of clerk of the school committee of North Providence, lately held by John H. Willard, is vacant.
"Given at the office of commissioner of public schools, in Providence, April 18, 1857.
"ROBERT ALLYN, Comm'r Pub. Schools."